UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RUSSELL BRYANT,

                Plaintiff,

                                            08-CV-6215

        v.

                                          **DECISION**

DELPHI AUTOMOTIVE SYSTEMS CORP.,     **and ORDER**

                Defendant.
_____

## INTRODUCTION

Plaintiff Russel Bryant ("plaintiff"), proceeding *pro se* brings this action pursuant to Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §2000(e) et seq. against Delphi Automotive Systems Corp. ("Delphi" and/or "defendant") claiming that he was discriminated against by Delphi on the basis of his sex. Specifically, plaintiff claims that Delphi intentionally discriminated against him when he was terminated based upon allegations of two female employees who claimed that he had touched/hit them. Defendant denies plaintiff's allegations, and moves for summary judgment dismissing plaintiff's Complaint on grounds that plaintiff has failed to state a *prima facie* case of gender discrimination. Further, defendant contends that even if plaintiff were able to prove a *prima facie* case of discrimination, Delphi articulated a legitimate non-discriminatory reason for its decision to discharge him and plaintiff failed to establish that Delphi's stated reason was pretextual. Plaintiff has opposed defendant's motion by submitting numerous pages of documents and

exhibits essentially claiming that he should not have been discharged since it was due to other co-workers' lies that resulted in his termination. For the reasons set forth below, I grant defendant's motion for summary judgment and dismiss plaintiff's Complaint in its entirety.

**BACKGROUND**

I. **Factual History**

Plaintiff started working for Delphi[1] as a temporary hourly employee on November 21, 2006. See DSOF, ¶2. On May 21, 2007, employees Tashara Levans ("Levans") and Pamela Monroe ("Monroe") complained to their supervisor, Frank Griffin ("Griffin") that earlier in the day, plaintiff entered the break room, started yelling at Levans accusing her of telling Griffin that plaintiff made remarks about Griffin's wife, particularly the length of her skirt. See id., ¶17. Thereafter, plaintiff pushed Levans in the face. See id., ¶18. After the two were separated by co-workers who were also in the break room, plaintiff turned to Monroe and started yelling at her and claiming that she informed Griffin about his remarks. See id. On the same day, Griffin, plaintiff's immediate supervisor, advised Thomas Redmond ("Redmond"), Delphi's Senior Labor Relations Representative that two of plaintiff's female co-workers had complained about an altercation they had with plaintiff

---

[1] Defendant is a global supplier of mobile electronics and transportation systems. It is headquartered in Troy, Michigan and prior to October 6, 2009, owned and operated a manufacturing site in Rochester, New York. See Defendant's Statement of Undisputed Materials Facts ("DSOF"), ¶1.

in Delphi's break room. See id., ¶¶12-13.

As soon as Redmond was informed of the incident, he began an investigation. See id., ¶14. In this regard, Redmond interviewed plaintiff who was accompanied by his union representative, David Kittle. See id., ¶15.[2] At the meeting, plaintiff admitted that he was "pissed off" that someone would report the comments he made about his supervisor to his supervisor. See id. In addition, plaintiff conceded that there was yelling between the co-workers. However, plaintiff denied pushing Levans and instead stated that he "put [his] finger in [Levans] face." See id. The following day, Redmond interviewed Levans and Monroe, who both verbally acknowledged and provided written statements confirming that plaintiff had threatened both of them and pushed Levans. See id., ¶¶16-18. As a result of the events of May 21, 2007, defendant suspended plaintiff pending completion of its investigation into the incident.

Delphi's Shop Rule #20 prohibits an employee from "[t]hreatening, intimidating, coercing or interfering with employees" of Delphi. See id., ¶20. Based on the information revealed during the investigation, defendant determined that credible evidence showed that plaintiff had (1) verbally assaulted

---

[2]While employed by Delphi, plaintiff was a member of UAW Local 1097 of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO (the "Union"), the labor organization that represents hourly employees at the Rochester, New York manufacturing facility. The terms and conditions of plaintiff's employment with defendant were governed by a series of collective bargaining agreements between Delphi and the Union.

and threatened both Levans and Monroe, and (2) physically assaulted Levans. See id., ¶21. Accordingly, defendant found that plaintiff had committed a serious violation of Shop Rule #20. Because the offense was serious, effective May 24, 2007, plaintiff was terminated by Delphi. Plaintiff was sent a Notice of Discharge from Delphi by certified mail on May 25, 2007.

## II. Procedural History

On or about August 16, 2007, plaintiff filed a charge of gender and race discrimination with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC"). See DSOF, ¶6. The NYSDHR dismissed plaintiff's complaint on February 4, 2008 determining that there was no probable cause to believe that Delphi engaged in the discriminatory practice complained of. See id., ¶7. The EEOC adopted the NYSDHR's findings, dismissed plaintiff's charge of discrimination and on April 17, 2008 issued him a right-to-sue notice. See id., ¶8. Thereafter, plaintiff commenced this lawsuit by filing the Complaint *pro se* on May 16, 2008. See id., ¶9. Plaintiff's complaint alleges that his discharge from Delphi was based solely on gender discrimination. See id., ¶10. Delphi filed its Answer to plaintiff's Complaint on October 16, 2008 denying all material allegations of the Complaint.

**DISCUSSION**

I. **Defendant's Motion for Summary Judgment**

The Court may grant summary judgment only where "there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial. See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.1995). Where, as here, the party opposing summary judgment is proceeding *pro se*, the Court must "read the pleadings...liberally and interpret them to raise the strongest arguments that they suggest."

Corcoran v. New York Power Auth., 202 F.3d 530, 536 (2d Cir.1999). Nevertheless, "proceeding *pro se* does not otherwise relieve [an opposing party] from the usual requirements of summary judgment." Viscusi v. Proctor & Gamble, 2007 WL 2071546, at *9 (E.D.N.Y.2007). Those requirements include the obligation not to rest upon mere conclusory allegations or denials, but instead to set forth "concrete particulars" showing that a trial is needed. See R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir.1984).

In determining whether to grant summary judgment, the Court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. at 1776. The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, or by a factual argument based on "conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.1991). In this regard, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in the pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir.1994), or on conclusory allegations or unsubstantiated speculation. See

Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998).

Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, see Montana v. First Fed. Sav. and Loan Ass'n of Rochester, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment-avoiding protracted, expensive and harassing trials-apply no less to discrimination cases than to...other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829 (1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000), quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

## II. **Plaintiff's Gender Discrimination Claim**

Gender discrimination claims brought pursuant to Title VII are analyzed under the McDonnell Douglas burden-shifting test. See McDonnell Douglas, 411 U.S. 792, 802 (1973). The initial burden lies with the plaintiff. To establish a *prima facie* case of gender discrimination, a plaintiff must show (1) he was within the protected class, (2) his job performance was satisfactory, (3) he was subjected to an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an

inference of discrimination. See Meiri, 759 F.2d at 995,; Kaplan v. Multimedia Entertainment, Inc., 2005 WL 2837561, at *5 (W.D.N.Y.2005); Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir.2000); see also McDonnell Douglas, 411 U.S. at 802 (stating the prima facie case more generally). Although the Second Circuit has stated that "the burden...that must be met...to establish a *prima facie* case is minimal," Hollander, 172 F.3d at 199, it has also noted that "[a] jury cannot infer discrimination from thin air." Norton v. Sams Club, 145 F.3d 114 (2d Cir.), cert. denied 119 S.Ct. 511 (1998).

If the plaintiff is able to establish a *prima facie* case of discrimination, the burden of persuasion shifts to the employer/defendant to articulate a legitimate, nondiscriminatory rationale for its actions. See Burdine, 450 U.S. at 254. Once the employer meets its burden, the presumption of discrimination that arose by plaintiff stating a *prima facie* case is eliminated. See Hunter v. St. Francis Hosp., 281 F.Supp.2d 534, 541-42 (E.D.N.Y.2003). The burden then shifts to the plaintiff to demonstrate that the employer's stated rationale is merely a pretext for discrimination. See McDonnell-Douglas, 411 U.S. at 802; St. Mary's Honor, 509 U.S. at 510-11; Reeves, 530 U.S. at 143; see also Droutman v. NY Blood Center, Inc., 2005 WL 1796120, at *6 (E.D.N.Y.2005) (Plaintiff must "prove that the employer's stated reason for its actions is merely pretextual, and that discrimination was an actual reason for the adverse employment

action"). Thus, to defeat a defendant's properly supported motion for summary judgment, the plaintiff must produce sufficient evidence to support a rational finding that the legitimate, non-discriminatory reason ("LNDR") proffered by the employer was false, and that more likely than not discrimination was the real reason for the discharge. See Viola v. Philips Med. Sys. of N. Am., 42 F.3d 712, 716 (2d Cir.1994).

### A. Plaintiff has failed to state a *prima facie* case of gender discrimination

For purposes of this summary judgment motion, the Court will assume that plaintiff has satisfied the first three elements of the *prima facie* case, (1) that plaintiff was within the protected class, (2) his job performance while at Delphi was satisfactory and that (3) he was subjected to an adverse employment action when he was terminated from his position at Delphi. See McDonnell-Douglas Corp, 411 U.S. at 802; Promisel v. First Am. Artificial Flowers, 943 F.2d 251, 259 (2d Cir. 1991), cert. denied, 502 U.S. 1060 (1992). However, plaintiff has failed to establish the fourth prong-that the discharge occurred under circumstances giving rise to an inference of gender discrimination. See McDonnell-Douglas Corp, 411 U.S. at 802; St. Mary's Honor, 509 U.S. at 510-11 (under the *prima facie* case plaintiff must show that his termination "occurred under circumstances giving rise to inference of discriminatory intent").

"[A]n inference of discrimination may be drawn from a showing

Page -9-

that the employer criticized the plaintiff's performance in [gender related] degrading terms, made invidious comments about others in the employee's protected group, or treated employees not in the protected group more favorably." See Hunter, 281 F.Supp.2d at 542 (citing Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir.1994)). In addition, "[a] plaintiff may raise such an inference by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir.2000). For disparate treatment to be probative of discrimination, a plaintiff must first demonstrate he was "'similarly situated in all material respects' to the individuals with whom [he] seeks to compare [himself]." Id. (quoting Shumway v. UPS, 118 F.3d 60, 64 (2d Cir.1997)).[3]

In this case, plaintiff testified that neither his supervisors, nor anyone else at Delphi, made derogatory comments to him, including comments relating to his gender. See Bryant Tr. at p. 30. Similarly, plaintiff could offer no examples of other males that received discriminatory treatment based on their gender. See id., at pp. 32-33. Further, plaintiff does not claim that there

---

[3]The factfinder usually determines whether two employees are similarly situated. See 230 F.3d at 39. However, the Second Circuit has provided guidance to help courts resolve at the summary judgment stage whether employees are similarly situated such that disparate treatment raises an inference of discrimination. The Second Circuit has acknowledged that the factors to be considered in determining whether persons are "similarly situated in all material respects" will vary by case. See id. at 40. However, it advises courts to consider "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." See id. (citing cases). To compare conduct under this standard, a plaintiff's and comparator's facts and circumstances need only bear a "reasonably close resemblance" and need not be identical. See id.

were similarly situated females who received more favorable treatment. Rather, as shown by the transcript below, plaintiff merely disagrees with defendant's decision that he violated Shop Rule #20 based on what he argues were lies made by Levans and Monroe during the investigation.

    Q. Okay. Were there ever any remarks made to you that you believe were based on your gender, the fact that you're a male?

    A. No.

    Q. No? Okay. Were there ever jokes or stories told to you regarding your gender?

    A. No. I kept to myself and I did my job. Simple as that.

    Q. Okay. Did anybody, a supervisor or anyone else at Delphi, ever say anything derogatory about the fact that you're a male as opposed to a female?

    A. No.

See Bryant Tr. at p. 30

    Q. Are you aware of any individuals that could testify that the reason your terminated is because you were a male?

    A. **It's not because I was a male. It was false lies that people made against me**.

    Q. You think that the reason your terminated is because they believed Ms. Monroe and Ms. Levans and not you related to what happened in the incident, correct?

    A. Yes.

See Bryant Tr. at pp. 31-32 (emphasis supplied).

    Q. And there's a significant number of males that work at Delphi?

    A. Uh-huh.

    Q. Okay. And did you believe that any other male employee at Delphi was discriminated against based on his gender?

A. Like I said, I kept to myself. I really didn't know too much about other people and I just worked.

Q. So the answer is no?

A. It's no.

See Bryant Tr. at pp. 32-33. Accordingly, plaintiff has made no showing from which an inference of discrimination could be drawn.

Further, the fact that Delphi credited the statements of the two female co-workers concerning the incident that occurred at the break room over plaintiff does not give rise to an inference of gender discrimination. A "plaintiff's...gut instinct and personally held beliefs" are not enough to support an inference of discrimination. See D'Cunha v. New York Hosp. Med. Ctr. of Queens, 2006 WL 544470, at *7 (E.D.N.Y.2006). Indeed, plaintiff's own testimony fails to show that his discharge was due to discriminatory animus. Plaintiff concedes that his termination was based on statements made by his co-workers regarding the break room incident. In this regard, it is not enough for plaintiff to dispute the results of the investigation and claim his innocence in the break room incident. Plaintiff must offer objective evidence that the circumstances surrounding his discharge gave rise to an inference of gender discrimination. See Shumway, 118 F.3d at 64. Plaintiff has failed to show such inference. Accordingly, I find that plaintiff offers no evidence that gives rise to an inference of gender discrimination related to his termination from Delphi. Because I find that plaintiff has failed to establish a *prima facie*

case and state a claim for gender discrimination under Title VII, I grant defendant's summary judgment motion, and dismiss plaintiff's Complaint with prejudice.

**B. Legitimate, Non-Discriminatory Reason and Pretext**

Even if plaintiff had stated a *prima facie* case of discrimination, defendant had a LNDR for its action. See Def. Br. at 8. Here, Delphi's LNDR for terminating plaintiff was plaintiff's violation of Shop Rule #20 when he "threatened, intimidated, coerced or interfered" with his co-workers Levans and Monroe during the break room altercation. Defendant further contends that plaintiff does not establish that Delphi's legitimate reasons for its action was pretextual. See id. at 9-10; see also St. Mary's Honor, 509 U.S. at 502; Reeves, 530 U.S. at 246 (burden of production shifts back to plaintiff to show that employer's stated reason was merely a pretext and that retaliatory animus was the true reason for employer's actions). Accordingly, in order to prove that the reasons articulated by Delphi for plaintiff's termination was a pretext for gender discrimination, plaintiff has the burden to show both that Delphi's reasons were "false, and that discrimination was the real reason." See St. Mary's Honor, 509 U.S. at 515. The court finds that plaintiff fails to make both showings.

Here, plaintiff disputes that he violated Shop Rule #20 that served as the basis for his discharge. In addition, he argues that he was treated unfairly because Delphi believed Levans and Monroe.

He further points to the fact that Levans and Monroe were permitted to provide written statements concerning the incident, but he was not. Moreover, plaintiff challenges the accuracy of statements made by his fellow co-workers regarding his misconduct and the decision made by Delphi to terminate him based on its belief that the plaintiff committed a serious violation of Shop Rule #20. However, plaintiff's disagreement with defendant's conclusion is not evidence of pretext. See Droutman, 2005 WL 1796120, at *9 ("An employer's good faith belief that an employee engaged in misconduct is a legitimate reason for terminating [him], and the fact that the employer is actually wrong is insufficient to show that the alleged misconduct is a pretext for discrimination"). Also, plaintiff offers no affirmative evidence to demonstrate that the real reason for his termination was his gender. See Das v. Our Lady of Mercy Med. Ctr., 2002 WL 826877, at *7 (S.D.N.Y.202) ("In order to prove pretext, Plaintiff must show 'both that the reason was false, and that discrimination was the real reason.'") (quotations omitted); see also Silva v. Peninsula Hotel, 509 F.Supp.2d 364, 386 (S.D.N.Y.2007) (Plaintiff's subjective belief that he was not treated fairly is simply not enough to demonstrate pretext).

The Court finds that Delphi has articulated a LNDR for terminating plaintiff and plaintiff cannot present sufficient evidence to show that Delphi's stated reason is pretextual. Accordingly, plaintiff's claim of gender discrimination fails as a matter of law. Based on the foregoing, there is no genuine issue of

material fact regarding plaintiff's discrimination claim, and Delphi is entitled to summary judgment.

## **CONCLUSION**

For the reasons set forth above, I grant defendant's motion for summary judgment, and dismiss plaintiff's Complaint in its entirety with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                          s/Michael A. Telesca
                                              Michael A. Telesca
                                      United States District Judge

DATED:    Rochester, New York
             March 22, 2010